UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-cv-24979-UU

IVY REED and PAUL REED,

    *Plaintiffs*,

v.

ROYAL CARIBBEAN CRUISES, LTD.,
d/b/a ROYAL CARIBBEAN INTERNATIONAL,

    *Defendant*.

_____/

**DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS
PENDING RULING ON WHETHER THE AUSTRALIAN COURT IS THE PROPER
FORUM TO ADJUDICATE PLAINTIFFS' CLAIMS**

Defendant, Royal Caribbean Cruises Ltd. ("RCCL") respectfully requests this Honorable Court enter an order staying all proceedings until the Federal Court of Australia, New South Wales Registry decides whether Plaintiffs' claims should be litigated in that jurisdiction, as per the binding terms and conditions in the contract of carriage that Plaintiffs voluntarily entered into with RCCL (the "Australian proceedings"). The Court in Australia recently noticed the final hearing to resolve this issue to occur from June 7 – June 10, 2021. RCCL files this motion in the interests of international comity, fairness, and conservation of judicial resources. *See, e.g., Hale v. Fr. Lurssen Werft Gmbh,* No. 09-23787-CIV-UNGARO, 2010 U.S. Dist. LEXIS 163026, at *1-12 (S.D. Fla. Apr. 23, 2010) (Ungaro, J.) (staying an action in Florida pending resolution of proceedings in England based on principles of international comity). In further support, RCCL states as follows:

**Factual and Procedural Background**

This matter arises from a December 9, 2019 volcanic eruption in Whakaari/White Island, New Zealand. Plaintiffs Ivy and Paul Reed (the "Reeds") are former RCCL passengers that allege they were injured during the eruption, which occurred when they visited the island as part of an optional shore excursion that was owned and operated by independent, non-parties. The Reeds booked their cruise through RCL, *see* (ECF No. 18-1 ¶¶ 6, *et seq.*), a subsidiary of RCCL that

owns and operates the *Ovation of the Seas*. *Id*. at ¶ 2. RCL is incorporated in the United Kingdom and registered as a foreign company in Australia with a registered office in New South Wales. *Id*.

The Reeds' contract of carriage contains RCL's Australian terms and conditions. The terms require the application of the laws of New South Wales, Australia and the adjudication of claims in that jurisdiction. *See* (ECF No. 18). The *Ovation of the Seas* departed from Sydney, Australia on December 4, 2019 for a twelve-night cruise that was due to call at ports in New Zealand before returning to Sydney. (ECF No. 1).

On December 7, 2020, the Reeds filed suit in United States District Court for the Southern District of Florida in contravention of the terms and conditions in their binding contract of carriage. *Id*.

On December 24, 2020, RCCL and RCL filed an Interlocutory Application in the Federal Court of Australia, New South Wales Registry seeking to enforce the Australian terms and conditions. (ECF No. 18-1, ¶ 19). On January 22, 2021, RCCL and RCL filed an Amended Interlocutory Application. *Id*. at ¶ 20.

On February 1, 2021, the Federal Court of Australia granted RCCL and RCL leave to serve Ivy Reed and Paul Reed "in accordance with the requirements for service under the laws of the United States of America." *See* Court Order, *Royal Caribbean Cruises Ltd v. Reed* [2021] FCA 51 (Stewart, J.), attached as Ex. "A."

On February 18, 2021, the Federal Court of Australia granted RCCL and RCL leave to serve the Reeds through substitute service on their attorneys via email because "reasonable attempts [were] made to effect personal service … [and] those attempts have failed." *See* Court Order, *Royal Caribbean Cruises Ltd. v. Reed (No 2)* [2021] FCA 114, at (ECF No. 18-1, ¶ 23 at Ex. 13). The Federal Court of Australia explained there was no "reasonable explanation" as to why the Reeds "would not give their US lawyers authority to accept service of process on their behalf, or why they would not answer the knock of the process server," noting that the "most obvious explanation" was that the Reeds were "seeking to avoid service as to delay the proceeding in this Court [the Australian proceedings] and to thereby potentially hinder its prospects." *Id*. The Reeds were served with process in the Australian proceedings that same day, on February 18, 2021. *Id*.

On March 12, 2021, the Federal Court of Australia (1) ordered the Reeds file and serve their defenses by March 19, 2021; (2) ordered RCCL and RCL to serve their reply by March 26,

2021; and (3) noticed the Australian proceedings "for further case management" on March 30, 2021. *See* Court Order, *Royal Caribbean Cruises Ltd. v. Reed* (No 3) [2021] FCA 225, attached as Ex. "B."

March 30, 2021, the Federal Court of Australia noticed the final hearing to occur from June 7, 2021 to June 10, 2021. *See* Court Order, *Royal Caribbean Cruises Ltd. v. Reed* No: NSD1359/2020, attached as Ex. "C."

RCCL seeks an order staying this action pending the resolution of the Australian proceedings.

## MEMORANDUM OF LAW

**I.     Legal standard.**

District courts have the inherent power to stay proceedings pending the resolution of parallel actions in other courts. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (Sotomayor, J.) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."); *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) ("The inherent discretionary authority of the district court to stay litigation pending the outcome of related proceeding in another forum is not questioned."); *Snyder v. Green Rds. of Fla. LLC*, 430 F. Supp. 3d 1297, 1302 (S.D. Fla. 2020) (Ungaro, J.).

"'A variety of circumstances may justify a district court stay pending the resolution of a related case in another court,' including case management or principles of abstention." *Edgewater House Condo. Ass'n v. City of Ft. Lauderdale*, 825 F. App'x 658, 665 (11th Cir. 2020) (citing *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) (evaluating district court's *sua sponte* stay of case pending resolution of a related foreign matter for abuse of discretion)). "Stays of proceedings can also promote judicial economy, reduce confusion and prejudice, and prevent possibly inconsistent resolutions." *Lopez v. Miami-Dade Cty.*, 145 F. Supp. 3d 1206, 1208 (S.D. Fla. 2015).

In the Eleventh Circuit, a stay "must not be immoderate, meaning it must be reasonable in scope and not indefinite." *Marti v. Iberostar Hoteles Y Apartamentos S.L.*, No. 20-20078-Civ-Scola, 2020 U.S. Dist. LEXIS 170005, at *3 (S.D. Fla. Sep. 16, 2020) (citing *Trujillo*, 221 F.3d at

1264); *see also Landis*, 299 U.S. 248 (holding that a "stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description.").

**II.   The Court should stay this action pending the resolution of the Australian proceedings in consideration of principles of international comity, fairness, and this Court's inherent authority manage its cases judiciously.**

It is well-settled that "in some private international disputes" like this one, "the prudent and just action for a federal court is to abstain from the exercise of jurisdiction." *Hale*, 2010 U.S. Dist. LEXIS 163026, at *5 (Ungaro, J.) (citing *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994)); *see also Marti*, 2020 U.S. Dist. LEXIS 170005, at *4 (Scola, J.) ("[T]he Court will consider principles of international comity, fairness to litigants, and use of judicial resources in evaluating the propriety of the stay.").

In *Turner*, the Eleventh Circuit identified three factors that courts should consider when deciding whether to abstain in a case pending the conclusion of parallel international litigation: (1) international comity; (2) fairness to litigants; and (3) the efficient use of scarce judicial resources. 25 F.3d at 1518.

In *Hale*, this Court considered the same three principles in a case involving a yacht brokerage commission, Floridian and German parties, and parallel proceedings in the High Court of Justice in London, England. *See* 2010 U.S. Dist. LEXIS 163026, at *1-12 (staying the case based on "considerations of international comity, fairness, and efficiency").

Likewise, in *Marti*, another district court in the Southern District of Florida recently applied the three factors from *Turner* to evaluate a stay order that it previously entered based on international comity. 2020 U.S. Dist. LEXIS 170005, at *4. The *Marti* Court also considered a fourth factor exclusive to the stay analysis – whether the stay was "immoderate or indefinite, and therefore illegal under Eleventh Circuit precedent." *Id*. at *8-11 (finding that the stay was not "immoderate or indefinite" because it would "end as soon as the European Commission rules on [the defendant's] application," which "the European Commission is actively considering").

Here, all factors considered in *Turner*, *Hale*, and *Marti* support staying this case pending the resolution of the Australian proceedings:

A.     **International comity.**

If the Court does not dismiss this action, (ECF No. 18), staying this case (like this Court did in *Hale*) would also "further the goals of international comity." 2010 U.S. Dist. LEXIS 163026, at *6. In the Eleventh Circuit, a stay based on "prospective" international comity is proper after weighing: "(1) 'the strength of the United States' interest in using a foreign forum,' (2) 'the strength of the foreign governments' interests,' and (3) 'the adequacy of the alternative forum.'" *Marti*, 2020 U.S. Dist. LEXIS 170005, at *5 (quoting *GDG Acquisitions*, 749 F.3d at 1030 (citing *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004))).

Here, the United States and Australia both have strong public policy interests in enforcing the parties' forum-selection clause, which contractually directs the litigation of this action to Australia. *See, e.g., The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (holding that forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."); *see also Haynsworth v. Corporation*, 121 F.3d 956, 962 (5th Cir. 1997) ("Since *The Bremen*, the [Supreme] Court has consistently followed this rule and, in fact, has enforced every forum selection clause in an international contract that has come before it.").

International public policy also weighs strongly in favor of staying this case (if not dismissing it) because of *The Bremen*'s presumption that forum-selection clauses are *prima facie* valid. In international transactions, uncertainty as to the forum for disputes and applicable law "will almost inevitably exist with respect to any contract touching two or more countries, each with its own substantive laws and conflict-of-laws rules." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516 (1974). In turn, "[a] contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction." *Id*.

Moreover, "[t]he expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts. … We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts." *The Bremen*, 407 U.S. at 8-9; *see also Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth, Inc.*, 473 U.S. 614, 629 (1985) (instructing American courts to enforce such clauses in the interests "of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes").

As to the adequacy of the Australian forum, there should be no dispute that Australia provides an adequate alternative forum. An alternative forum is inadequate "only in rare circumstances where the remedy offered by the other forum is clearly unsatisfactory." *Aldana v. Del Monte Fresh Produce N.A.*, 578 F.3d 1283, 1290 (11th Cir. 2009) (internal quotation marks omitted). Such a remedy is insufficient when it is "no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). And "a defendant can prove that the subject matter of plaintiffs' claims is cognizable in a foreign forum by proffering the declaration of a legal expert or attorney admitted to practice there who states that plaintiffs can pursue their claims in that jurisdiction." *Glob. Med. Sols. v. Simon*, No. CV 12-04686 MMM (FMOx), 2013 U.S. Dist. LEXIS 207019, at *11-12 (C.D. Cal. Jan. 10, 2013) (finding that Australia provided an adequate remedy at law by relying on the defendant's expert's declaration).

Here, the Declaration Stephen J. Thompson (RCCL and RCL's Australian counsel) filed in support of RCCL's Motion to Dismiss (ECF No. 18) establishes that the Reeds have cognizable claims under the laws of New South Wales, Australia. (ECF No. 18-2). Moreover, Australia's "legal system clearly follows procedures that ensure that litigants will receive treatment that satisfies American notions of due process," *Turner*, 25 F.3d at 1520, in part because the Australian "legal system derives from the same source as ours, namely the English common law." *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 633 (7th Cir. 2010) (Posner, J., concurring); *Blacklink Transp. Consultants Pty v. Summer*, No. 105638/07, 2008 NYLJ LEXIS 3958, *12-14 (N.Y. Sup. Ct. Jan. 9, 2008) (explaining that Australia's legal system is "much like ours, despite procedural differences" because it is "a fellow democratic country having a common law system like our own" after "examin[ing] the process through which [an Australian] judgment was obtained").

After weighing these factors, the Court should find that the interests of international comity strongly weigh in favor of staying or dismissing this case. *Cf. Hale*, 2010 U.S. Dist. LEXIS 163026, at *8 (finding "that England's relative interests are slightly stronger given the pending

action in its court, the strong European connections, and the several relevant English choice-of-law and arbitration provisions"); *see also Marti*, 2020 U.S. Dist. LEXIS 170005, at *6 (S.D. Fla. Sep. 16, 2020) (finding that "concerns of international comity weigh in favor of this Court maintaining the stay over these proceedings until the European Commission provides Iberostar authority to participate in this litigation").

### B. Fairness to litigants.

Staying or dismissing this case would "further the goal of fairness." *Hale*, 2010 U.S. Dist. LEXIS 163026, at *8. In evaluating this factor, courts typically consider, '(1) the order in which the suits were filed, (2) the more convenient forum, and (3) the possibility of prejudice to the parties resulting from abstention.'" *Marti*, 2020 U.S. Dist. LEXIS 170005, at *6-7 (quoting *Turner*, 25 F.3d at 1521-22); *accord Hale*, 2010 U.S. Dist. LEXIS 163026, at *8.

Here, like in *Turner*, the two "lawsuits were filed almost simultaneously." 25 F.3d at 1522 (noting that "the German action was filed one week prior to the American litigation"). The Reeds filed suit in this Court on December 7, 2020. (ECF No. 1). RCL filed suit in Australia on December 24, 2020 to enforce the parties' forum-selection clause. (ECF No. 18-1 at ¶ 19). Little weight, if any, should be given to the Reeds' having filed their action first because the parties "contemplated the claimed inconvenience" and "it is difficult to see why any such claim of inconvenience should … render the forum clause unenforceable." *The Bremen*, 407 U.S. at 16-17 (noting that the "selection of a London forum was clearly a reasonable effort to bring vital certainty [*i.e.*, fairness] to this international transaction" because the foreign tribunal "provide[d] a neutral forum experienced and capable in the resolution of admiralty litigation.").

Additionally, the Australian Court provides the more convenient forum because the subject cruise was based out of Australia, the incident occurred in New Zealand, the Reeds received medical treatment in New Zealand, and, as such, the majority of witnesses and evidence in this matter are located in the Australia/New Zealand area. *Cf. Turner*, 25 F.3d at 1522 (explaining how "the weightier German interest … indicate[d] that the German court provide[d] a more convenient forum for the litigation, as d[id] the fact that most of the witnesses and experts in the litigation would be European, and the fact that the Agreement call[ed] for performance of the contract, for the most part, in Germany" to conclude that "concerns of fairness favor the German forum.").

And as to the possibility of prejudice to the Reeds: here, like in *Turner*, "nothing has occurred in the [Australian] proceedings to date to dispel the expectation that [the Reeds] will have ample opportunity to fairly present [their claims] to the [Australian] trial court." *Id*.; *accord Hale*, 2010 U.S. Dist. LEXIS 163026, at *10 (rejecting arguments "suggest[ing] that abstention would prejudice Hale's right to a fair and just proceeding in the English court") (citations omitted).

The Court should therefore conclude that deference to the Australian proceedings would further the goal of fairness. *Id*.

### C. Efficient use of judicial resources.

Staying this case would further the judicious and efficient use of scarce judicial resources. *Hale*, 2010 U.S. Dist. LEXIS 163026, at *8. "Factors relevant to this inquiry are '(1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation; (3) whether the actions have parties and issues in common; and (4) whether the alternative forum is likely to render a prompt disposition.'" *Marti*, 2020 U.S. Dist. LEXIS 170005, at *7-8 (quoting *Turner*, 25 F.3d at 1522 (11th Cir. 1994)). Here, it would be redundant — the antithesis to the efficient use of judicial resources — to have two parallel actions going forward contemporaneously to decide the same issues between the same parties based on the same facts. Moreover, like in *Marti*, the Australian proceedings are moving forward swiftly so there is "no reason to presume" that the Federal Court of Australia "is unlikely to render a prompt decision." 2020 U.S. Dist. LEXIS 170005, at *8; *see also Hale*, 2010 U.S. Dist. LEXIS 163026, at *10-11 (agreeing that "allowing the actions to proceed in parallel would be unnecessarily duplicitous," considering that the parallel proceedings were "well ahead" of the action pending before the Court).

### D. The stay is not indefinite. The Court in Australia will enter its decision following the final hearing scheduled to commence on June 7, 2021

When considering whether a stay is "immoderate," as prohibited by the Supreme Court in *Landis*, courts in the Eleventh Circuit examine "the scope of the stay (including its potential duration) and the reasons cited by the district court for the stay." *Marti*, 2020 U.S. Dist. LEXIS 170005, at *9 (distinguishing *Trujillo* and *Marti* to find that the stay in *Marti* was not "indefinite" and was therefore lawful because the Bahamian proceedings in *Trujillo* were "not progressing quickly" while the defendant's application in *Marti* was "under consideration in the normal course" by the European Commission) (quoting *Trujillo*, 221 F.3d at 1264).

Here, the requested stay is not indefinite. The Australian proceedings have moved expeditiously and are scheduled to conclude shortly. RCCL and RCL filed suit in the Australian proceedings on December 24, 2020. (ECF No. 18-1 ¶ 19). On January 22, 2021, RCCL and RCL filed an Amended Interlocutory Application. *Id*. at ¶ 20. By February 1, 2021, the Federal Court of Australia had granted RCCL and RCL leave to serve Ivy Reed and Paul Reed "in accordance with the requirements for service under the laws of the United States of America." (Ex. "A," Court Order).

After several attempts to serve the Reeds with process, the Federal Court of Australia granted RCCL and RCL leave to serve the Reeds through substitute service on their attorneys via email because the "most obvious explanation" for the failed attempts at personal service was that the Reeds were "seeking to avoid service as to delay the proceeding in this Court [the Australian proceedings] and to thereby potentially hinder its prospects." (ECF No. 18-1, ¶ 23 at Ex. 13)). The Reeds were served with process in the Australian proceedings the same day the Federal Court of Australia granted RCCL and RCL leave to serve the Reeds via email, on February 18, 2021. (ECF No. 18-1 ¶ 23). Otherwise, the Australian proceedings would be further along than they already are.

Nevertheless, on March 12, 2021, the Federal Court of Australia (1) ordered the Reeds to file and serve their defenses in the Australian proceedings by March 19, 2021; (2) ordered RCCL and RCL to serve their reply by March 26, 2021; and (3) listed the Australian proceedings "for further case management" on March 30, 2021. (Ex. "B," Court Order). During a March 30, 2021 case management hearing, the Federal Court of Australia noticed the four-day final hearing to commence on June 7, 2021. (Ex. "C," Court Order).

The Court should find that the stay is not "immoderate" or "indefinite." *See Marti*, 2020 U.S. Dist. LEXIS 170005, at *9.

### III.   Conclusion.

Defendant RCCL respectfully requests this Honorable Court enter an order: (1) staying these proceedings pending the resolution of the Australian proceedings; and (2) grant any other relief this Court deems just and proper.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Undersigned counsel certifies that he conferred with Plaintiffs' counsel via email in a good faith effort to resolve the issues raised in the motion. Plaintiffs' counsel advised that Plaintiffs oppose the requested relief.

Respectfully submitted,

**/s/ *Jerry D. Hamilton***
Jerry D. Hamilton, Esq.
Florida Bar No.: 970700
jhamilton@hamiltonmillerlaw.com
Carlos J. Chardon, Esq.
Florida Bar No.: 517631
cchardon@hamiltonmillerlaw.com
Spencer B. Price, Esq.
Florida Bar No.: 1001044
sprice@hamiltonmillerlaw.com
Victor M. Iglesias, Esq.
Florida Bar No. 1002476
viglesias@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 379-3686
*Attorneys for Defendant, RCCL*

## CERTIFICATE OF SERVICE

I certify that on March 24, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or *pro se* parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

**/s/ *Jerry D. Hamilton***
Jerry D. Hamilton, Esq

## SERVICE LIST

*Attorneys for Plaintiff*

Charles L. Vaccaro, Esq.
charles@vaccarolawfirm.com
service@vacarrolawfirm.com
THE VACARRO LAW FIRM, P.A.
8958 West State Road 84, Suite 328
Davie, Florida 33324
Telephone: (954) 734-2320
Facsimile: (954) 337-2959

-AND-

Stephen Diaz Gavin, Esq.
stephen.diaz.gavin@rimonlaw.com
Jill Penwarden, Esq.
jill.penwarden@rimonlaw.com
RIMON, P.C.
1717 K Street, N.W., Suite 900
Washington D.C. 20006
Telephone: (202) 871-3772

*Attorneys for Defendant, RCL*

Jerry D. Hamilton, Esq.
jhamilton@hamiltonmillerlaw.com
Carlos J. Chardon, Esq.
cchardon@hamiltonmillerlaw.com
Spencer B. Price, Esq.
sprice@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 379-3686
Facsimile: (305) 379-3690
 With the current screwed