## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-cv-24979-RAR

**IVY REED and PAUL REED**,

     Plaintiffs,

v.

**ROYAL CARIBBEAN CRUISES LTD.,**
**d/b/a/ ROYAL CARIBBEAN INTERNATIONAL**,

     Defendant.

_____/

### ORDER DENYING MOTION TO DISMISS, GRANTING MOTION
### TO STRIKE, AND DENYING AS MOOT MOTIONS TO STAY

THIS CAUSE comes before the Court on the following Motions: (1) Defendant's Motion to Dismiss Plaintiffs' Complaint Based on the Parties' Forum-Selection Clause and/or, in the Alternative, *Forum Non Conveniens* [ECF No. 18] ("Motion to Dismiss"); (2) Defendant's Motion to Stay All Proceedings Pending Ruling on Whether the Australian Court is the Proper Forum [ECF No. 25] ("Motion to Stay");  (3) Plaintiffs' Motion to Strike Declaration of Kathryn J. Lock Filed in Support of Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss [ECF No. 33] ("Motion to Strike"); and (4) Defendant's Amended Motion to Stay All Proceedings Pending this Court's Ruling on Motion to Dismiss to Enforce Forum-Selection Agreement [ECF No. 43] ("Amended Motion to Stay").  The Court having considered the Motions, the pertinent portions of the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that, as explained herein, the Motion to Strike [ECF No. 33] is **GRANTED**; the Motion to Dismiss [ECF No. 18] is **DENIED**; and the Amended Motion to Stay [ECF No. 43] and Motion to Stay [ECF No. 25] are both **DENIED AS MOOT**.

## **BACKGROUND**

The following is alleged in Plaintiffs' Complaint and in declarations and exhibits attached to the parties' filings. [ECF No. 1] ("Complaint"). Defendant submits three declarations in support of its Motion to Dismiss, along with multiple exhibits: (1) Declaration of Amanda Campos, Defendant's Director of Guest Claims and Litigation, [ECF No. 18-1] ("Campos Decl."); (2) Declaration of Stephen Thompson, Australian lawyer, [ECF No. 18-2] ("Thompson Decl."); and (3) Declaration of Kathryn Jane Lock, which Defendant attaches to its reply brief, [ECF No. 26-1] ("Lock Decl."). Plaintiff submits four declarations along with multiple exhibits: (1) Affidavit of Duncan Hall, Record Request Processor at the Internet Archive, [ECF No. 24-1] ("Hall Aff."); (2) Declaration of Geoffrey Robert Brookes, Australian lawyer, [ECF No. 24-2] ("Brookes Decl."); (3) Declaration of Stephen Diaz Gavin, [ECF No. 24-3] ("Gavin Decl."); (4) Declaration of Ivy Reed, [ECF No. 24-4] ("Ivy Reed Decl."); and [ECF No. 25-5] through [ECF No. 25-8], which contain exhibits to Plaintiff Ivy Reed's declaration.

### A. The Parties

Husband and wife Paul and Ivy Reed are Maryland residents who, on December 9, 2019, were passengers aboard Defendant Royal Caribbean Cruise Lines' ("Defendant RCCL") cruise ship, the *Ovation of the Seas* ("Ship"). Compl. ¶¶ 1–3, 12. Plaintiffs seek compensation for "permanent, disfiguring and disabling injuries" they sustained when a volcano erupted during a December 9, 2019 shore excursion to White Island off the coast of New Zealand. *Id.* ¶¶ 12–13.

Defendant RCCL is a corporation organized under the laws of the Republic of Liberia with its principal place of business in Miami, Florida. *Id.* ¶ 4. Royal Caribbean International ("RCI") is a registered fictious name wholly owned by RCCL and under which RCCL does business, with its principal place of business in Miami, Florida. *Id.* ¶ 5. According to the declaration of Defendant RCCL's Director of Guest Claims and Litigation, Amanda Campos, the Ship is a Bahamian-

flagged vessel operated by RCL Cruises, Ltd. ("RCL"), a company registered in the United Kingdom that is also registered as a foreign company in Australia.  Campos Decl. ¶¶ 1–2.

    B.  <u>The Competing Forum-Selection Clauses</u>

On February 23, 2019, Plaintiffs purchased their passage on the Ship for a roundtrip cruise from Sydney, Australia to New Zealand, to commence on December 4, 2019 and continue for twelve nights.  Compl. ¶ 26.  Plaintiffs booked their cruise through Travel Managers Australia Pty. Ltd., an Australian travel agent ("Plaintiffs' Travel Agent"), who in turn obtained the tickets from Cruise Fusion, an Australian wholesaler ("Ticket Wholesaler").  Campos Decl. ¶ 7.

The parties submit conflicting evidence about which forum-selection clause governs. Plaintiffs rely on the Cruise/Cruisetour Ticket Contract ("Ticket Contract") that provides for venue in the Southern District of Florida, while Defendant relies on the Australian terms and conditions ("AUS T&Cs") located in a brochure referenced in the Guest Ticket Booklet, which  provides for venue in New South Wales, Australia.

**i.  Forum-Selection Clause in the AUS T&Cs**

Defendant submits that Plaintiffs consented to jurisdiction in New South Wales based on the following: (1) booking invoices that contained links to the AUS T&Cs; (2) a March 2019 screenshot of RCL's website that included a link to the AUS T&Cs; and (3) the Guest Ticket Booklet's references to the AUS T&Cs, which directed passengers to a brochure where the AUS T&Cs could be found.

*1.  Booking Invoices*

As indicated by the booking invoices provided by RCL to the Ticket Wholesaler, the cruise was booked through RCL, Level 12, 157 Walker Street, North Sydney, NSW 2060, a wholly owned subsidiary of Defendant RCCL.  Campos Decl. ¶¶ 2(c), 8–10.  According to the Campos Declaration, RCL sent a copy of the booking invoices to the Ticket Wholesaler, who was to send

the booking invoices to Plaintiffs via email. *Id.* ¶ 8. The emails with these booking invoices contained links to the AUS T&Cs. *Id.* ¶¶ 8–11; *id.* at 10, 52, 62 (the very bottom of the mail says: "Terms and Conditions – Read our Terms and Conditions AU Terms"). The invoices are dated February 22, 2019, February 26, 2019, and August 12, 2019. *Id.* There is nothing in the record indicating that Plaintiffs received these exact email invoices; the emails that Defendant attaches to its briefing are emails Defendant forwarded to Australian lawyer Stephen Thompson. *Id.* at 8, 50, 60. According to Plaintiff Ivy Reed's declaration, Plaintiffs did not receive the email invoices. Reed Decl. ¶¶ 12–15. Further, there is nothing in the record indicating what exactly the T&Cs referred to in the booking invoice emails said.

### 2. March 2019 Screenshot

A screenshot of "http://www.royalcaribbean.com.au/" dated March 4, 2019[1] included a link with the words "AUS T&Cs" at the bottom of the homepage. Campos Decl. ¶ 10; *id.* at 55, 59. The same screenshot included a Cruise Contract link close to the AUSA T&Cs link. *Id.* at 59.

### 3. The Guest Ticket Booklet and Referenced Brochure

On October 15, 2019, RCL provided the Ticket Wholesaler with the Guest Ticket Booklet for the subject cruise, which the Ticket Wholesaler forwarded to Plaintiffs' Travel Agent. *Id.* ¶¶ 11–12; *id.* at 66–80. In its email to the Ticket Wholesaler, RCL indicated that, as part of the check-in, Plaintiffs would have to "accept the Cruise Ticket Contract." *Id.* ¶ 12. Plaintiffs received the Guest Ticket Booklet on October 16, 2019. Reed Decl. ¶ 3.

The Guest Ticket Booklet made three references to terms and conditions, two of which directed the reader to a brochure, and one of which directed the reader to a link. First, the bottom of the first page of the Guest Ticket Booklet stated the following:

---

[1] The Court notes that although Ms. Campos said the screenshot is dated March 4, 2019, Campos Decl. ¶ 10, it appears to be dated February 15, 2019, *id.* at 55.

> **IMPORTANT NOTICE TO GUESTS**
>
> You are bound by the **terms and conditions in the Royal Caribbean International <u>Worldwide Cruises brochure</u>**.  These terms and conditions also apply to any additional services booked on board.   Please fill out your guest information, including mandatory information at www.RoyalCaribbean.com.au/onlinecheckin.

Campos Decl. ¶ 14 (emphasis added); *id.* at 66.  Second, page 10 of the Guest Ticket Booklet stated:

> **BOOKING TERMS & CONDITIONS**
>
> **The following Terms and Conditions form the basis of your contract with [RCCL]** . . . .
>
> Based on the cruise line reservation office that processed your cruise reservation request, the **Terms and Conditions that govern your cruise or cruise tour are set forth in the <u>cruise brochure</u>** applicable for reservations made through that reservation office.

*Id.* at 75 (emphasis added).  Third, also on page 10, the Guest Ticket Booklet directed the reader to review the terms and conditions at a link:

> In the unlikely event that you have reached this message in error, our standard passenger cruise ticket contract [*sic*] shall apply, and you may be required to sign that contract prior to being allowed to board for your cruise.  **The Terms and Conditions of that standard passenger <u>ticket contract</u> can be found at <u>www.RoyalCaribbean.com.au.</u>**

*Id.* (emphasis added).

According to the Campos Declaration, clicking the first link, www.RoyalCaribbean.com.au/onlinecheckin, would direct the user to Defendant RCCL's Australian website, where they could check in for the cruise and review the referenced Worldwide Cruises brochure ("Brochure").  *Id.* ¶ 15.  There are no photographs or screenshots in the record indicating that the Brochure could be found at www.RoyalCaribbean.com.au/onlinecheckin during

the relevant timeframe.  At the beginning of the AUS T&Cs found on page 92 of the Brochure, in

the "Overview" section, the Brochure states:

> **Please Note:** . . . Please read these conditions carefully.  These terms
> and conditions are to be construed under the laws of NSW and you
> agree to submit to the exclusive jurisdiction of the court of that state
> in the event of a dispute between you and Royal Caribbean
> International.

Campos Decl. ¶ 16; *id.* at 13.  According to Plaintiff Ivy Reed's declaration, Plaintiffs never

received or otherwise reviewed the Brochure at any time prior to the incident.  Reed Decl. ¶ 16.

### ii.  Forum-Selection Clause in the Ticket Contract

On October 16, 2019, Plaintiffs received the Guest Ticket Booklet.  Reed Decl. ¶ 3; [ECF

No. 24-5] at 1–3.  The Guest Ticket Booklet included the three references to terms and conditions

on pages 1 and 10, discussed *supra*.  [ECF No. 24-5] at 3, 12.  Plaintiffs direct the Court's attention

to the website link located on page 10 of the Guest Ticket Booklet, which stated that "[t]he Terms

and Conditions of that standard passenger ticket contract can be found at

www.RoyalCaribbean.com.au."  *Id.* at 12.

According to the affidavit of Duncan Hall, a Request Processor at the Internet Archive, if

a United States-based user clicked on the link www.RoyalCaribbean.com.au on October 14, 2019,

that link took the user to the homepage of the RCI website as shown in Exhibit A to the Hall

affidavit.  Hall Aff. at 3–7.  The website contained a link to a "Cruise Contract"—the website made

no reference to and did not include an express, direct link to any terms and conditions.  *Id.* at 7.

The "Cruise Contract" link, as of October 13, 2019, took the user to the Ticket Contract.  *Id.* at

10–24.  Paragraph 1 of the Ticket Contract states:

> INTRODUCTION: This Cruise/CruiseTour Ticket Contract (the
> 'Ticket Contract') describes the terms and conditions that will apply
> to the relationship between the Passenger (as defined in Section 2.g
> below) and the Carrier (as defined in Section 2.b below) for the
> Vessel with respect to the Cruise or CruiseTour covered by this

Agreement.  Except as otherwise expressly provided herein, **this Agreement supersedes any other written or oral representations or agreements relating to the subject matter of this Agreement or the Cruise or the CruiseTour** . . . .

Purchase or use of this Ticket Contract, whether or not signed by the Passenger, shall constitute the agreement by Passenger, on behalf of himself and all other persons traveling under this Ticket Contract (including any accompanying minors or other persons for whom the Ticket Contract was purchased), to be bound by the terms and conditions of this Ticket Contract.  This Ticket Contract cannot be modified except in a writing signed by a corporate officer of Operator. . . .  **In the event of any conflict between such other brochure or website materials and this Ticket Contract, the terms of this Ticket Contract shall prevail.**

*Id.* at 12 (emphasis added).  Paragraph 9 of the Ticket Contract goes on to state:

FORUM SELECTION CLAUSE FOR ALL LAWSUITS; CLASS ACTION WAIVER:

a. EXCEPT AS PROVIDED IN SECTION 10 (b) [concerning arbitration of non-tort claims] . . . , IT IS AGREED BY AND BETWEEN PASSENGER AND CARRIER THAT ALL DISPUTES AND MATTERS WHATSOEVER ARISING UNDER, IN CONNECTION WITH OR INCIDENT TO THIS AGREEMENT, PASSENGER'S CRUISE, CRUISETOUR, LAND TOUR OR TRANSPORT, SHALL BE LITIGATED, IF AT ALL, IN AND BEFORE THE UNITED STATES **DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA LOCATED IN MIAMI-DADE COUNTY, FLORIDA, U.S.A.,** (OR AS TO THOSE LAWSUITS TO WHICH THE FEDERAL COURTS OF THE UNITED STATES LACK SUBJECT MATTER JURISDICTION, BEFORE A COURT LOCATED IN MIAMI-DADE COUNTY, FLORIDA, U.S.A.) TO THE EXCLUSION OF THE COURTS OF ANY OTHER STATE, TERRITORY OR COUNTRY. . . .

*Id.* at 18 (capitalization in original) (emphasis added).

Defendant submits additional evidence in its reply brief.  [ECF No. 26-1].  According to Kathryn Lock, Director of Marketing for RCL's Australian and New Zealand markets who manages the Australian website www.RoyalCaribbean.com.au, on October 14, 2019, although the "Cruise Contract" link did indeed exist, there were two ways to view the AUS T&Cs on

www.RoyalCaribbean.com.au.  Lock Decl. ¶¶ 3, 5, 14(a), (c), (d).  The first way to view the AUS T&Cs was for the user to click the "Legal" link on the bottom of the homepage, which was located close to the "Cruise Contract" link.  *Id.* ¶ 14(c).  However, the "Legal" webpage Ms. Lock accessed and produced is dated April 20, 2020 "as there is no archive of this page prior to this date.  In October 2019, this link would have contained the AUS T&Cs in effect at that time."  *Id.*  The second way to view the AUS T&Cs was for the user to click on the "Download a Brochure" link under the heading "Plan a Cruise."  *Id.* ¶ 14(d).  Again, the "Download a Brochure" webpage Ms. Lock accessed and produced is dated April 20, 2020 "as there is no archive of this page prior to this date.  In October 2019, this link would have contained the Worldwide Brochure for 2019-2020."  *Id.*

In sum, Plaintiffs contend that the forum-selection clause in the Ticket Contract found at the "Cruise Contract" link on www.RoyalCaribbean.com.au in October 2019 governs.  Defendant argues that the forum-selection clause in the AUS T&Cs governs, relying on the existence of the AUS T&Cs in the Brochure purportedly found on www.RoyalCaribbean.com.au/onlinecheckin at an unspecified time; the "AUS T&Cs" link found at "www.RoyalCaribbean.com.au" in March 2019; links to the AUS T&Cs in booking invoices; and the AUS T&Cs found at the Legal and Download a Brochure links on www.RoyalCaribbean.com.au in April 2020.  [ECF No. 24] at 7–8; Campos Decl. ¶ 15; Lock Decl. ¶ 14.

C.  Procedural History

On December 7, 2020, Plaintiffs filed this action, in which they bring the following claims: (1) negligent failure to warn; (2) negligence based on apparent agency between Defendant and the tour operator; (3) negligent misrepresentation; (4) negligent selection of tour operator; (5) loss of consortium – Ivy Reed; and (6) loss of consortium – Paul Reed.  [ECF No. 1].  On March 5, 2021, Defendant filed its Motion to Dismiss. [ECF No. 18].  On April 6, 2021, Defendant filed a Motion

to Stay Pending Ruling on Whether the Australian Court is the Proper Forum, [ECF No. 25], which has since become moot. [ECF No. 42] ¶ 6.  On April 16, 2021, Plaintiffs filed their Motion to Strike.  [ECF No. 33].  And on July 9, 2021, after voluntarily dismissing their Australian proceeding, Defendant filed an Amended Motion to Stay Proceedings Pending this Court's Ruling on Motion to Dismiss.  [ECF No. 43].

In the Motion to Dismiss, Defendant argues that this matter should be dismissed pursuant to the forum-selection clause in the AUS T&Cs because the clause is presumptively valid and reasonable.  [ECF No. 18] at 6–17.  In the alternative, Defendant contends that this matter should be dismissed under a "modified *forum non conveniens* analysis," which applies when there is a valid and enforceable forum-selection clause.  *Id.* at 5–6, 17–18.  Plaintiffs assert that the forum-selection clause in the Ticket Contract applies, and even if the Ticket Contract is not the superseding agreement, Defendant created an ambiguity such that it should be resolved against Defendant.  [ECF No. 24] at 7–11.  Plaintiffs further argue that because Defendant's forum-selection clause argument fails, so too does its "modified *forum non conveniens*" argument, and in any event, Australia is not an adequate forum under the more thorough traditional *forum non conveniens* analysis.  *Id.* at 4, 11–19.

In the Motion to Strike, Plaintiffs ask the Court to strike the Lock Declaration filed in support of Defendant's Reply to Plaintiffs' opposition to the Motion to Dismiss [ECF No. 26-1], because new evidence and new arguments should not be raised for the first time in a reply brief, particularly when the evidence was available when the motion was filed.  [ECF No. 33].  Defendant responds that the declaration was necessary to rebut arguments made by Plaintiffs in their opposition to the Motion to Dismiss.  [ECF No. 37].

**LEGAL STANDARD**

In 2013, the Supreme Court in *Atlantic Marine Construction Co. v. United States District Court* declared that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," not through a Rule 12(b)(3) motion. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013); *see also Pappas v. Kerzner Int'l Bah. Ltd.*, 585 F. App'x 962, 964 (11th Cir. 2014). Ordinarily, to obtain dismissal based on the doctrine of *forum non conveniens*, a movant must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir.2001)).

However, the Supreme Court in *Atlantic Marine* set forth a modified version of the *forum non conveniens* doctrine applicable in cases where there is a valid and enforceable forum-selection clause. *Atl. Marine*, 571 U.S. at 63. "Under that version, the burden is on the plaintiff to show that dismissal of the complaint is unwarranted, and a court may weigh only public interest factors in determining if a plaintiff has met this burden." *Pappas*, 585 F. App'x at 964. Courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64. "Thus, a district court now must consider an enforceable forum-selection clause in the *forum non conveniens* analysis." *GDG Acquisitions, LLC*, 749 F.3d at 1029. "[A]n enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis. *Id.* at 1028.

"When ruling on a motion to dismiss for *forum non conveniens*, a court may 'consider matters outside the pleadings if presented in proper form by the parties.'" *Turner v. Costa Crociere S.P.A.*, 488 F. Supp. 3d 1240, 1246 (S.D. Fla. 2020) (quoting *MGC Commc'ns, Inc. v. BellSouth*

*Telecomm., Inc.*, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001)). "Additionally, in considering a motion to dismiss for *forum non conveniens*, a court must accept the facts in the plaintiff's complaint as true, 'to the extent they are uncontroverted by the defendants' affidavits.'" *Id.* (quoting *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000)). "When affidavits conflict, the court is inclined to give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff." *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990).

## ANALYSIS

### A.  The Lock Declaration is Stricken

Local Rule 7.1(c)(1) limits a reply memorandum "strictly . . . to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law."  S.D. FLA. L.R. 7.1(C)(1).  A reply memorandum may not raise new arguments or evidence, "particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence." *Baltzer v. Midland Credit Mgmt.*, No. 14-20140, 2014 WL 3845449, at \*1 (S.D. Fla. Aug. 5, 2014) (citing *Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345 (S.D. Fla. 2012); *TCC Air Servs., Inc. v. Schlesinger*, No. 05-80543, 2009 WL 565516, at \*7 (S.D. Fla. Mar. 5, 2009)).

However, there is "[a] significant difference . . . between new arguments and evidence, on the one hand, and rebuttal arguments and evidence, on the other" when they are raised in reply briefs. *Giglio Sub S.N.C. v. Carnival Corp.*, No. 12-21680, 2012 WL 4477504, at \*2 (S.D. Fla. Sept. 26, 2012).  To that end, Local Rule 7.1(c) carves out a limited exception to the general no-new-arguments/evidence-rule and permits a movant to "serve a  reply  memorandum in support of the motion, which reply memorandum shall be strictly limited to  rebuttal of matters raised in the memorandum  in opposition  without  reargument  of  matters  covered  in  the  movant's  initial

memorandum of law." S.D. FLA. L.R. 7.1(C).  Consequently, "affidavits and declarations [attached

to a reply brief] may contain facts not previously mentioned in the" underlying motion, "as long

as the facts rebut elements of the opposition memorandum and do not raise wholly new factual

issues."  *Giglio Sub S.N.C.*, 2012 WL 4477504 at *2 (citing *Burger King Corp. v. Ashland

Equities, Inc.*, 217 F. Supp. 2d 1266, 1280–81 (S.D. Fla. 2001)).

        The Lock Declaration fails to rebut the evidence Plaintiffs cite in their opposition, as well

as the core of Plaintiffs' opposition—that the forum-selection clause in the Ticket Contract

governs.  While it is true that Plaintiffs' opposition states there was "no link" to the AUS T&Cs

on the www.RoyalCaribbean.com.au website as of October 2019, [ECF No. 24] at 2, and the Lock

Declaration contends there were links to the AUS T&Cs at that time, the Lock Declaration fails to

appropriately rebut Plaintiffs' arguments and simply adds more facts and confusion.  First, the

Lock Declaration does not rebut or even mention the Ticket Contract or the Hall Affidavit, in

which Plaintiffs put forth evidence that the www.RoyalCaribbean.com.au website contained a link

to the Ticket Contract with the Southern District of Florida forum-selection clause.  Rather, the

Lock Declaration puts forth new evidence that there were two ways to access the AUS T&Cs on

the www.RoyalCaribbean.com.au website—through the "Legal" link and through the "Download

a Brochure" link under the "Plan a Cruise" heading.  Lock Decl. ¶ 14(c), (d).  Instead of responding

to the factual matters raised in the Hall Affidavit and the Ticket Contract, the Lock Declaration

references other past webpages not previously referenced in the Hall Affidavit or elsewhere in the

parties' filings.

        Second, the information described in the Lock Declaration was available to Defendant

RCCL when it filed its Motion to Dismiss.  Indeed, Defendant RCCL relies on a March 2019

screenshot of the www.RoyalCaribbean.com.au website and should have been aware of the need

for an October 2019 screenshot of that website given that Plaintiffs were provided with the Guest Ticket Booklet at such time.

Third, the Lock Declaration asserts that in October 2019, the two links to the AUS T&Cs—the "Legal" link and the "Download a Brochure" link—were available on the www.RoyalCaribbean.com.au website.   Lock Decl. ¶ 14(a), (b).   However, the "Legal" and "Download a Brochure" webpages that Ms. Lock accessed are dated April 20, 2020, "as there is no archive of th[ese] page[s] prior to this date."   *Id.* ¶ 14(c), (d).   Although the Lock Declaration goes on to state that the links "would have contained the AUS T&Cs in effect at that time," *id.*, the Court finds that the more prudent course of action is to abstain from guessing.   The Court is not satisfied by the Lock Declaration's reliance on webpages that were accessed in April 2020 to rebut Plaintiffs' assertion that no such webpages existed in October 2019.   Thus, the Court will not consider the Lock Declaration in resolving the Motion to Dismiss.[2]

## B.   The Forum-Selection Clause in the Ticket Contract Controls

Defendant argues that the Court should enforce the forum-selection clause in the AUS T&Cs because it is presumptively valid and dismiss Plaintiffs' Complaint based on the modified *forum non conveniens* doctrine.   [ECF No. 18].   Plaintiff contends that the forum-selection clause in the Ticket Contract is enforceable, and that even if the Court were to find that the AUS T&Cs control, dismissal of this action is improper under the more comprehensive *forum non conveniens* analysis.   [ECF No. 24].

First, "the court must decide as a matter of law on the agreed facts which forum selection clause governs." *Asoma Corp. v. SK Shipping Co., Ltd.,* 467 F.3d 817, 822 (2d Cir. 2006).   After

---

[2]   Even if the Court were to consider the Lock Declaration in analyzing the Motion to Dismiss, the Court notes that the declaration would not change the Court's analysis and is not useful given the disparity between the dates.

determining which forum-selection clause applies, the Court can then address the *forum non conveniens* issue. *See Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 528 F. App'x 33, 35 (2d Cir. 2013) (finding district court erred in proceeding directly to a *forum non conveniens* analysis without first analyzing "the applicability of each forum selection clause to the various aspects of this litigation.").

"The enforceability of a forum-selection clause in a diversity case is governed by federal law." *Pappas*, 585 F. App'x at 966 n.4 (citing *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003)). When confronted with two or more conflicting forum-selection clauses,

> [t]he analysis of which forum selection clause to enforce, or whether to enforce any of them at all, is dependent upon the facts of a particular case. In line with the fact-intensive nature of the analysis, courts have taken varying approaches in determining whether to enforce none or merely one of the forum selection clauses at issue in a given case.

*Samuels v. Medytox Solutions, Inc.*, No. 13-7212, 2014 WL 4441943, at *4–5 (D.N.J. Sept. 8, 2014) (citations omitted); *see, e.g., Schrenkel*, 2018 WL 5619358 at *5–6.

In determining which forum-selection clause to enforce, courts have examined the claims at issue to determine which contract, and therefore which forum-selection clause, applies. *See, e.g.*, *Schrenkel*, 2018 WL 5619358 at *5–6. Accordingly, the Court will conduct a fact-intensive inquiry into which contract governs, and specifically whether the contract governs Plaintiffs' tort claims.

### i. The Ticket Contract was Available on www.RoyalCaribbean.com.au in October 2019

There is insufficient evidence to conclude that the AUS T&Cs could be found on Defendant's website in October 2019, when Plaintiffs received their Guest Ticket Booklet. In arguing that the AUS T&Cs govern, Defendant relies on: (1) the "AUS T&Cs" link found at

www.RoyalCaribbean.com.au in March 2019; (2) links to the AUS T&Cs in booking invoices RCL sent to the Ticket Wholesaler in February and August 2019, with no indication as to what these links said or whether Plaintiffs ever received these invoices; and (3) two provisions in the Guest Ticket Booklet indicating that "terms and conditions" could be found in a Brochure at www.RoyalCaribbean.com.au/onlinecheckin and at www.RoyalCaribbean.com.au.  [ECF No. 24] at 7–8; Campos Decl. ¶¶ 14, 15; *id.* at 66, 75.  It is undisputed that there was no direct link to any terms and conditions in the Guest Ticket Booklet.

First, the Court finds that the relevant timeframe at issue is October 2019, when Plaintiffs received the Guest Ticket Booklet with references to terms and conditions.  Thus, the Court does not find Defendant's March 2019 screenshot of the www.RoyalCaribbean.com.au website to be helpful.  The same is true for the booking invoices.  Further, Defendant does not indicate what the AUS T&Cs links in the booking invoices said at the time they were sent.  Finally, Defendant has not adequately shown that the Brochure with the AUS T&Cs was available at either www.RoyalCaribbean.com.au/onlinecheckin or at www.RoyalCaribbean.com.au in October 2019, when Plaintiffs received the Guest Ticket Booklet.  While the Campos Declaration provides that "clicking on the [www.RoyalCaribbean.com.au/onlinecheckin] link would direct passengers to RCCL's website, where they could . . . review the referenced . . . [B]rochure," there are no photographs or screenshots demonstrating this.  *See* Campos Decl. ¶¶ 14–16.

Rather, it is undisputed the Ticket Contract was available on www.RoyalCaribbean.com.au under the link "Cruise Contract" in October 2019, as evidenced by a sworn website screenshot. Hall Aff.  And it is undisputed that in that Ticket Contract, the forum-selection clause providing for exclusive jurisdiction in this District existed.  Indeed, the Guest Ticket Booklet itself directed Plaintiffs to the Ticket Contract: "Terms and Conditions of that standard passenger ticket contract can be found at www.RoyalCaribbean.com.au."  Campos Decl. at 75.

Consequently, one reason to enforce the Ticket Contract's forum-selection clause is that it is undisputed it could be found on Defendant's website—whereas there is insufficient evidence that the AUS T&Cs could be found on Defendant's website.

### ii. The Ticket Contract's Forum-Selection Clause is Mandatory with Respect to Plaintiffs' Tort Claims

To determine if a claim falls within the scope of a forum-selection clause, courts must look to the language of the clause itself. *Bahamas Sales Associate, LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012). The plain meaning of a forum selection clause's language governs its interpretation. *Slater v. Energy Services Group Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011).

A forum-selection clause stating applicability to "any case or controversy arising under or in connection with this Agreement" should be interpreted as encompassing "all causes of action arising directly or indirectly from the business relationship evidenced by the contract." *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987), *aff'd*, 487 U.S. 22 (1988). A clause that states that all claims "shall" be brought in the specified forum is mandatory, not permissive. *Slater,* 634 F.3d at 1330. Further, mandatory forum-selection clauses are presumptively valid and enforceable. *Id.* at 1331.

The AUS T&Cs' forum-selection clause provides for "exclusive jurisdiction" in New South Wales "in the event of a dispute between [plaintiffs] and Royal Caribbean," while the forum-selection clause in the Ticket Contract requires that "all disputes and matters whatsoever arising under, in connection with or incident to this agreement, passenger's cruise, cruisetour, land tour or transport" "shall be litigated" in the Southern District of Florida. Campos Decl. at 13, 175; Hall Aff. at 18; *Stewart*, 810 F.2d at 1070. "Cruise" is defined in the Ticket Contract as "the specific cruise covered by this Ticket Contract . . . and shall include . . . those periods when the Guest is on land while the Vessel is in port." Hall Aff. at 13.

While the language in each clause, on its face, appears to encompass tort claims, the Court finds that the language in the Ticket Contract is more forceful, commanding, and leaves little room for guesswork.  It encompasses "all disputes and matters whatsoever," not just "a dispute," and states that the disputes "shall be litigated" in this District.  The language of the Ticket Contract's forum-selection clause clearly encompasses Plaintiffs' tort claims against Defendant. Those claims arise from a volcanic eruption that occurred while Plaintiffs were passengers on an RCCL Cruise, during an RCCL-arranged shore excursion to White Island while the Ship was at port in Tauranga. [ECF No. 1] ¶¶ 13, 14, 20, 28–34.  Plaintiffs assert four claims of negligence and two claims of loss of consortium.  Plaintiffs' claims, which arose during the subject cruise, unquestionably arise "under, in connection with or incident to" both the Ticket Contract and the "cruise" as defined by the Ticket Contract.  Plaintiffs' tort claims are therefore within the scope of the Ticket Contract's forum-selection clause.

### iii.   The Ticket Contract Expressly Supersedes Conflicting Contracts

Paragraph 1 of the Ticket Contract provides that in the event of a conflict of provisions, the Ticket Contract is the superseding agreement: "this Agreement supersedes any other written or oral representations or agreements relating to the subject matter of this Agreement . . . . In the event of any conflict between such other brochure or website materials and this Ticket Contract, this Ticket Contract shall prevail."  Hall Aff. at 12.  Even if Defendant had provided sufficient evidence that its websites also contained a link to the AUS T&Cs with a different forum-selection clause, those provisions would be superseded pursuant to the plain language of the Ticket Contract.

### iv.   The Ticket Contract's Forum-Selection Clause is Enforceable

Forum-selection clauses are presumptively enforceable contract terms.  *See Slater,* 634 F.3d at 1331.  "If the forum[-selection clause] was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively

enforceable." *Phillips v. Audio Active Ltd*., 494 F.3d 378, 383 (2d Cir. 2007).  A clause that meets this standard enjoys a presumption of validity that "may only be overcome by a clear showing that the forum selection clause is unreasonable under the circumstances."  *Hartford Fire Ins. Co. v. Novocargo USA Inc*., 156 F. Supp. 2d 372, 375 (S.D.N.Y. 2001) (citing *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972)).

In this case, the forum-selection clause was certainly communicated to Defendant, the *drafter*.  And, as explained *supra*, the clause has mandatory force and covers Plaintiffs' claims. This case presents a situation in which Defendant, a large, multi-national corporation headquartered in Miami, Florida, is trying to dismiss a lawsuit filed by United States citizens in the very judicial district where Defendant is headquartered and compel them to bring suit on the other side of the world.  When faced with a similar case in which an international corporation moved to dismiss a case on *forum non conveniens* grounds when it was being sued in the district where it was headquartered, the Third Circuit denied the motion, stating:

> This case is puzzling in that frequently the *forum non conveniens* issue is raised by a defendant sued away from home who seeks to convince the court that the balance of relevant factors should be tipped against requiring it to defend far from his home jurisdiction . . . .  Here, in contrast, [the defendant], which is headquartered in Wilmington, Delaware and is the largest employer in that state, seeks to move the action against it to a forum more than 3,000 miles away.  It is, as Alice said, "curiouser and curiouser."

*Lony v. E.I. Dupont de Nemours & Co*., 935 F.2d 604, 608 (3d Cir. 1991) (citations omitted). Moreover, Defendant seeks to dismiss this case despite the forum-selection clause in the Ticket Contract that *it drafted and placed on its Australian website* in a link titled "Cruise Contract."  The Ticket Contract's forum-selection clause is presumptively enforceable.

In sum, the Ticket Contract's forum-selection clause controls because there is insufficient evidence to conclude that the AUS T&Cs could be found on Defendant's website in October 2019.

In addition, the Ticket Contract's forum-selection clause commands control of Plaintiffs' tort claims, the Ticket Contract supersedes any conflicting contract, and the Ticket Contract's forum-selection clause is presumptively valid.

C.   The Suit is Properly Before the Court Pursuant to *Forum Non Conveniens* Analysis

Having determined that the Ticket Contract's forum-selection clause controls and that Plaintiff's claims fall within the scope of the Ticket Contract's forum-selection clause, the Court now proceeds to the *forum non conveniens* analysis.  *See, e.g.*, *Schrenkel*, 2018 WL 5619358 at *8–9.  *Forum non conveniens* allows a court to decline jurisdiction over a case if there is a more convenient forum for the case to be litigated.  *See, e.g., Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1302 n.4 (11th Cir. 2002).  *Atlantic Marine*'s "modified version" of the *forum non conveniens* doctrine gives "controlling weight" to valid forum-selection clauses.  *Atl. Marine*, 571 U.S. at 63.  To overcome the presumption of enforceability, "the plaintiff bears the burden of establishing that [dismissal] . . . is unwarranted."  *Id.*  In evaluating this presumption, the court must consider only public interest factors in determining if the plaintiff has met their burden, and "the practical result is that forum-selection clauses should control except in unusual cases."  *Id.* at 63–64.

"As the United States Supreme Court has noted, the existence of a forum-selection clause is essentially case dispositive in the *forum non conveniens* analysis."  *McCoy v Sandals Resorts Int'l, Ltd.*, No. 19-22462, 2019 WL 6130444, at *4 (S.D. Fla. Nov. 18, 2019) (citing *Atl. Marine*, 571 U.S. at 62); *see also GDG Acquisitions, LLC*, 749 F.3d at 1028 ("[A]n enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis).  Only under extraordinary circumstances unrelated to the convenience of the parties should a motion to dismiss based on *forum non conveniens* be denied when there is a valid forum-selection clause.  *See Atl. Marine*, 571 U.S. at 62.

Plaintiffs have met their burden of showing that dismissal is unwarranted by demonstrating that the valid and enforceable forum-selection clause in the Ticket Contract applies. Because the Ticket Contract's forum-selection clause is enforceable and applies to the claims at issue, this suit is properly before this Court and Defendant's *forum non conveniens* motion fails.

Although the Court need not consider the public interest factors because Plaintiffs have demonstrated that the Ticket Contract's forum-selection clause governs, the Court finds that the public interest favors venue in this District. *Atl. Marine*, 571 U.S. at 63–64. Public interest factors include: (1) the administrative difficulties stemming from the court's docket congestion; (2) the interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems of conflict of laws, or the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Kolawole v. Sellers*, 863 F.3d 1361, 1372 (11th Cir. 2017) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

Defendant claims that Florida has no interest in the dispute, which involves the eruption of a volcano in New Zealand that injured Maryland citizens who were on a cruise that was based out of Australia. [ECF No. 18] at 17. But Defendant's argument is misplaced. First, Defendant wrongly focuses on Florida alone. As the Eleventh Circuit has held, "the relevant forum for purposes of the federal *forum non conveniens* analysis is the United States as a whole," not a particular state. *Wilson v. Island Sease Invs., Ltd.*, 590 F.3d 1264, 1271 (11th Cir. 2009) (internal quotation marks omitted). Defendant's argument overlooks the significant interest of the United States in the regulation of a company based in the United States that services many Americans. "There is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated

to a foreign jurisdiction." *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1311 (11th Cir. 2002). Plaintiffs' Complaint alleges that Defendant, a company headquartered in the United States with its principal place of business in the Southern District of Florida, failed to warn Plaintiffs of the heightened danger of eruption of the volcano and its negligent selection of the White Island Tour operator. [ECF No. 1] ¶¶ 73–119. And Defendant's decisions regarding selection of the excursion operator for White Island would have been made in Miami. *See* Gavin Decl. at 23.

Further, the Complaint has invoked admiralty jurisdiction. This District has considerable experience in dealing with such cases. Importantly, the Ticket Contract specifies that any suit by Plaintiffs must be brought in the Southern District of Florida. And the parties agree that "the public interest is to enforce contracts." [ECF No. 18] at 18; [ECF No. 24] at 18. Moreover, there are no conflict of laws issues before the Court. Lastly, although there is a potential burden to this District regarding jury service by its residents for a possibly lengthy and complex jury trial of this case, such a consideration is greatly outweighed by the public interest in the regulation of the practices of a company headquartered in this District. *See, e.g., Exter Shipping, Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1326 (N.D. Ga. 2004) (in evaluating the public interest factors, "jury duty . . . ought not to be imposed upon the people of a community which has no relation to the litigation."). In sum, the public interest factors weigh in favor of denying Defendant's Motion to Dismiss.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motion to Strike [ECF No. 33] is **GRANTED**. The Clerk of Court SHALL STRIKE [ECF No. 26-1], "Declaration of Kathryn Jane Lock," from the docket.

2. The Motion to Dismiss [ECF No. 18] is **DENIED**.

3. The Amended Motion to Stay [ECF No. 43] is **DENIED AS MOOT** because this
   Order resolves the Motion to Dismiss. *Nken v. Holder*, 556 U.S. 418, 433 (2009) (a
   stay is an "an exercise of judicial discretion") (citation omitted).

4. The Motion to Stay [ECF No. 25] is **DENIED AS MOOT** because the Australian
   proceedings have been terminated. *See* [ECF No. 42] ¶ 6.

5. Defendant SHALL file its responsive pleading within **fourteen (14) days** of the
   entry of this Order. Fed. R. Civ. P. 12(a)(4)(A).

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of September, 2021.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**