UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-24979-RAR

**IVY REED and PAUL REED**,

    Plaintiffs,

v.

**ROYAL CARIBBEAN CRUISES LTD.,**
**d/b/a ROYAL CARIBBEAN INTERNATIONAL**,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION TO DISMISS**

The facts in this case are tragic. What was promoted as an adventure of a lifetime, and an unforgettable opportunity to have one of New Zealand's most epic experiences, turned into a verifiable nightmare when the White Island volcano erupted during a shore excursion taken by passengers on Royal Caribbean Cruises Ltd.'s ("RCCL") ship, Ovation of the Seas (the "Ship"). The volcanic eruption claimed the lives of 22 people and seriously injured 25 more. Among the injured are Plaintiffs Ivy and Paul Reed (collectively "the Reeds" or "Plaintiffs").

Before the Court is Defendant's Motion to Dismiss Plaintiffs' Complaint [ECF No. 50] ("Motion"). Having reviewed the Motion, Plaintiffs' Response in Opposition [ECF No. 54] ("Response"), Defendant's Reply in Support of the Motion [ECF No. 60] ("Reply"), the record, applicable law, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss is **GRANTED IN PART and DENIED IN PART** as set forth herein.

## BACKGROUND

The parties are familiar with the procedural background of the case which is not particularly relevant to the instant Motion. Accordingly, the Court begins with the facts contained within Plaintiffs' Complaint, which as explained below, must be accepted as true at this stage of the proceedings.

### I. The Incident

On May 28, 2019, after booking the cruise with RCCL, the Reeds purchased tickets from RCCL for several shore excursions during the cruise. Compl. ¶ 27. One of those excursions was an outing at the Tauranga port in New Zealand described as a "Journey to sunny Whakatane for a scenic boat ride along the picturesque Bay of Plenty to White Island for an unforgettable guided tour of New Zealand's most active volcano." *Id.*

On the morning of the tour, and after docking in Tauranga, the Reeds were handed an excursion voucher which would permit them to board the tour boat. *Id.* at ¶ 39. The front side of the excursion voucher advised that the passengers should wear walking shoes but specified nothing else regarding specialized clothing or safety equipment that might be needed to hike near the crater of the volcano. *Id.* at ¶ 40. There was no warning as to any potential hazards of visiting an active volcano, any past eruptions or volcanic activity, the elevated volcanic threat level as explained below, or injuries that might be suffered. *Id.* There was also no general warning written on the voucher; only a statement that guests in wheelchairs and others with limited mobility should not select the volcano tour as a shore excursion. *Id.*

The Reeds disembarked the Ship at the direction of crew members and boarded a bus to Whakatane arranged by RCCL. *Id.* at ¶ 41. After a short bus ride, the Reeds and fellow passengers from the Ship arrived at Whakatane and the dock of White Island Tours ("WIT"). *Id.* Once the

Reeds arrived at the dock in Whakatane, they and their fellow passengers were immediately put aboard a WIT company vessel, the Te Puia Whakaari. *Id*. at ¶ 42. The Reeds maintain this was the first indication that the shore excursion would be led by WIT as opposed to RCCL. *Id*.

After a trip lasting approximately 1 hour and 15 minutes from the dock at Whakatane, the Te Puia Whakaari arrived at White Island at approximately 1:00 P.M. *Id*. at ¶ 43. Prior to disembarking the vessel, the Reeds and their fellow passengers were provided yellow plastic helmets and instructed by the WIT guides to wear them at all times while on the island, as well as air filters, which the guides advised several times were for visitors' comfort if bothered by the sulfurous smell. *Id*. This was the only safety information conveyed to the Reeds on the Te Puia Whakaari. *Id*. At no time before the vessel reached White Island were the Reeds warned by RCCL, the tour operator, or anyone else of the elevated volcanic alert level. Nor were they provided any demonstration on how to use safety equipment while on White Island, given written safety information, or presented with any written disclosure of the risks of the excursion or any other documentation. *Id*. at ¶ 42. Although a refuge had been created on White Island and designated as a shelter of last resort in the event of an eruption, no one from RCCL or WIT advised the Reeds of the shelter's existence. *Id*. Further, neither RCCL nor WIT ever advised the Reeds about any rescue plan in the event of an eruption. *Id*.

The excursion passengers, including the Reeds, were transferred first to an inflatable, Zodiac dinghy to reach the jetty consisting of ladders to climb onto the rock (visitors donned life jackets for the transfer, which they returned to WIT once on the island). *Id*. at ¶ 43. The eruption occurred around 2:10 P.M., once the group was on the island. *Id*. at ¶ 46. The resulting emissions of volcanic gas, rock, and ash heated to between 390° and 730° Fahrenheit, caused the Reeds immediate fear for their lives; severe, life threatening burns over large portions of their bodies;

permanent and disfiguring scarring; reduced use of their limbs and extremities; immediate, ongoing, and future needs for medical and psychological treatment; ongoing pain and suffering; rumination by Ms. Reed on a daily basis about the events surrounding the incident; occasional terrifying flashbacks for Ms. Reed; and emotional distress. *Id.* at ¶ 24. The Reeds also allege their injuries were exacerbated by the fact they received "little if any first aid equipment" and there appeared to be no medical or first aid trained personnel among the crew of the WIT boat, which rescued them from the island and transferred them to Whakatane where they received medical attention. *Id.* at ¶¶ 55, 56.

On December 11, 2019, two days after the eruption, RCCL informed all its cruise passengers that future shore excursions to all active volcanoes had been canceled. *Id.* at ¶ 25.

## II. Past Eruption & Warning Signs

Plaintiffs allege that RCCL and its tour operator were aware of a 2016 volcanic eruption at White Island that spewed ash and debris over the same hiking trails used by cruise passengers during shore excursions. *Id.* at ¶ 14. Specifically, in a report on the 2016 eruption, New Zealand's earthquake and geological hazard information organization, GeoNet, noted that it had found "hundreds of ballistics per square meter," or lava and rocks thrown out by the volcano, "around the tourist track at Whakaari." *Id.* at ¶ 15. Moreover, On November 18, 2019, just a few weeks prior to the December 9, 2019 eruption, GeoNet raised the volcanic alert level for White Island to Level 2, indicating that "unrest hazards on the volcano . . . could include eruptions of steam, gas, mud and rocks[,]" and that "[t]hese eruptions can occur with little or no warning." *Id.* at ¶ 16. RCCL did not warn the Reeds or its other passengers of the elevated threat of a catastrophic volcanic eruption at White Island. *Id.* at ¶ 17. Plaintiffs allege that the alert bulletin was widely disseminated and GeoNet had specifically conveyed this information to RCCL's White Island

excursion operator. *Id*. at ¶ 21. Further, Plaintiffs allege that after one passenger on the Ship became aware of the elevation of the volcanic alert level to Level 2 and requested to back out of the White Island shore excursion, an RCCL staffer acknowledged that the warning level had been raised to Level 2. *Id*. at ¶ 22.

Only six days before the 2019 eruption, in a Volcanic Alert Bulletin issued on December 3, 2019, GeoNet noted that "[m]oderate volcanic unrest continues at Whakaari/White Island, with substantial gas, steam and mud bursts observed . . . the Volcanic Alert Level stays at Level 2." *Id*. at ¶ 38. The Bulletin noted volcanic activity "regularly throwing mud and debris 20-30 meters into the air above the vent" of the White Island volcano. *Id*. The Bulletin provided that "[o]bservations and data to date suggest that the volcano may be entering a period where eruptive activity is more likely than normal." *Id*.

### III.  RCCL's Representations About the Excursion

RCCL marketed discounts available to cruise passengers that booked excursions, including the excursion at issue here, directly through RCCL. *Id*. at ¶ 28. Additionally, RCCL recommended to the Reeds that they not engage in excursions, tours, or activities other than those sold through RCCL. *Id*. Plaintiffs allege that RCCL benefited financially from the direct sale of shore excursions to its passengers, including the White Island shore excursion purchased by the Reeds, and created incentives for passengers including the Reeds to book the White Island excursion directly through RCCL. *Id*. RCCL handled payment arrangements, promoted, and branded the excursion on brochures and vouchers as an RCCL activity for the Ship's passengers. *Id*.

Further, RCCL advertised the White Island excursion on its website, claiming that RCCL had chosen the providers and characterized them as "our excursions." *Id*. at ¶ 31. In additional promotional material on its website, RCCL classified shore excursions and/or excursion operators

as having been "Certified for Quality." *Id*. at ¶ 34. RCCL represented that it "thoroughly reviewed its tour operators," including each excursion's "guide" that "provides proper equipment and ensures the safety of gear used on excursions." *Id*. RCCL's website promoting the White Island excursion did not include any warning about its potential hazards. *Id*. Specifically, RCCL promoted and marketed the visit to White Island on its website as the "adventure of a lifetime" and an "unforgettable" opportunity to see one of New Zealand's "epic" adventures. *Id*. at ¶ 20.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp*., 693 F.3d 1333, 1337 (11th Cir. 2012); *see also Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 959 (11th Cir. 2009). "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

## ANALYSIS

Defendant moves to dismiss all counts in Plaintiffs' Complaint. Thus, the Court will analyze the merits of the Motion as it pertains to each count, in turn. At the outset, the Court notes

that RCCL passengers who were injured in the same volcanic eruption as the one at issue have brought suit in two related matters in this district: *Barham v. Royal Caribbean Cruises Ltd.*, 556 F. Supp. 3d 1318 (S.D. Fla. 2021), appeal dismissed, No. 21-13119-JJ, 2021 WL 6197353 (11th Cir. Nov. 22, 2021); and *Singh v. Royal Caribbean Cruises Ltd.*, No. 20-24987-CIV, 2021 WL 6884873 (S.D. Fla. Dec. 10, 2021). The Court is guided by the wisdom of its colleagues in both *Barham* and *Singh*, and largely reaches the same conclusions on nearly identical claims—aside from a few factual differences present here.

## I. Negligence/Failure to Warn (Count I)

Count I alleges that RCCL was negligent as it failed to advise the Reeds about "potential dangers beyond the point of debarkation[,]" Compl. ¶ 76, namely the increased potential for volcanic eruption at the time they toured the island. *Id*. In their Motion, RCCL claims they had no duty to warn Plaintiffs because the risk of eruption was open and obvious and RCCL did not know, nor should it have known, that the volcano would erupt. Mot. at 2. This argument is unpersuasive under the standard for negligence in maritime actions, which both parties agree applies in this matter. *See* Mot. at 2 (quoting Compl. ¶ 74) ("[f]ederal maritime law applies to actions arising from alleged torts committed aboard a vessel sailing in navigable waters.").

When analyzing a maritime claim alleging tortious conduct, the Eleventh Circuit has explained that courts should "rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.,* 616 F.2d 825, 827 (5th Cir. 1980)) (internal quotation omitted). To plead negligence, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4)

the plaintiff suffered actual harm. *Id*. (citing *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008)).

With respect to duty, "a shipowner owes the duty of exercising *reasonable care* towards those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630 (1959) (emphasis added). This standard of reasonable care "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1322 (11th Cir. 1989). And while a cruise line operator has a duty to warn its passengers of dangers, "this obligation extends only to those dangers which are not apparent and obvious to the passenger." *Isbell v. Carnival Corp.,* 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006).

RCCL lodges its attack solely against the duty elements of Plaintiffs' failure to warn claim. Specifically, RCCL alleges (1) it had no duty to warn Plaintiffs of the risk of volcanic eruption because the dangers were "open and obvious"; (2) Plaintiffs have failed to allege that RCCL knew, or should have known, about the volcanic eruption; and (3) Defendant had no duty to warn against the eruption because it was an "Act of God." Mot. at 2. All three of these arguments are misplaced.

"Open and obvious conditions are those that should be obvious by the ordinary use of one's senses." *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015). This standard is judged by that of a reasonable person, meaning that it is an objective test rather than a subjective one. *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1346 (S.D. Fla. 2015) ("[The plaintiff's] subjective observations are irrelevant in determining whether a duty to warn existed."). RCCL focuses on whether the risk of visiting an active volcano is an open and obvious risk when the correct question is whether the *increased* risk of visiting a volcano that had just been upgraded to

a higher risk designation, had erupted merely three years prior, and had been subject to a recent warning from New Zealand's earthquake and geological hazard information organization, was an open and obvious risk. In this respect, the case is analogous to *Frasca v. NCL (Bahamas), Ltd.* where the Eleventh Circuit held that the question was not whether the risk of a deck being slippery was open and obvious, but rather whether the risk of it being as "slippery as it actually was," was open and obvious. 654 F. App'x 949, 952–53 (11th Cir. 2016). In short, the extent of the risk must be open and obvious, not just the underlying risk itself. *Id.* Indeed, this exact argument was addressed, and disposed of, by the court in *Barnham*:

> While a plethora of federal and state courts have held that naturally occurring geographic conditions constitute open and obvious dangers, the Court finds it goes too far to find, as a matter of law, that it is implausible that a reasonable person would have been unaware of the danger posed by visiting a recently active volcano that scored a "2" on New Zealand's alert system. To put a finer point on it, the general, abstract risk of a volcano eruption (like slipping on a wet deck) may be open and obvious, but the extent of that risk—that the volcano had erupted several times in recent years and geological warning signs were flashing—may not be.

556 F. Supp. 3d at 1329. Accordingly, this line of argument is foreclosed.

Defendant's second line of argument, that RCCL did not have notice of the volcanic eruption and therefore had no duty to warn its passengers of the risk of eruption, also fails. RCCL claims that even though it "could not have anticipated the subject eruption, it nonetheless warned Plaintiffs about the possibility." Mot. at 6. Both statements are untrue, and the latter highlights the fallacious nature of the former. The so-called warning RCCL points to was merely the event description, which stated that White Island is an active volcano. Mot. at 4. Further, this reasoning completely ignores Plaintiffs' argument "that there is some level of volcanic activity [ ] at which it is unacceptably risky to allow passengers to visit the volcano without forewarning and that [RCCL] knew/should have known White Island reached that level." *Barham*, 556 F. Supp. 3d at

1329.  Once again, as pled, the issue is not that RCCL did not, or could not, have notice that eruption was sure to occur, but rather that it knew or should have known of the increased risk of eruption.  Thus, Plaintiffs meet their burden of pleading facts that show RCCL knew or should have known of the 2016 eruption, the recent warning signs, and the upgraded risk level.

Finally, in passing, RCCL mentions that it had no duty to warn Plaintiffs of the eruption because it was an "Act of God."  Courts have held that a "Herculean effort [is required] to shoulder the Act of God burden."  *See, e.g., Barham*, 556 F. Supp. 3d at 1328.  That is because "An Act of God is a loss happening in spite of all human effort and sagacity." *Incardone v. Royal Caribbean Cruises, Ltd.*, 16-20924-CIV, 2020 WL 2950684, at *3 (S.D. Fla. Jan. 18, 2020) (internal quotation omitted).  Specifically, an Act of God is "any accident, due directly and exclusively to natural causes without human intervention, which by no amount of foresight, pains, or care, reasonable to have been expected could have been prevented." *Id.* (citing *Cenac Towing Co. v. Southport, LLC*, 232 F. App'x 929, 932 (11th Cir. 2007)).  While a volcanic eruption may be an Act of God in the sense that no one truly knows when a volcano will erupt, the Reeds argue that their injuries could have been prevented with proper warning had RCCL communicated the increased risk of visiting the volcano during the time period in which the eruption occurred.  *See* Resp. at 8–9.  The Court agrees.  Accordingly, Plaintiffs have properly pled their general negligence/failure to warn claim such that Count I survives Defendant's Motion to Dismiss.

## II. Negligence Based on Apparent Agency (Count II)

Next, Defendant argues that Plaintiffs have not adequately pled their claim based on vicarious liability for the allegedly negligent actions of WIT. Mot. at 8. Defendant's argument on this point is twofold: (1) Plaintiff has failed to adequately plead the negligence claim underlying

their theory of vicarious liability; and (2) WIT is not RCCL's agent as a matter of law and thus RCCL cannot be held vicariously liable for WIT's actions. *Id*.

Regarding the first point, Plaintiffs' theory of vicarious liability is premised on the same arguments underlying their claim for general negligence and failure to warn in Count I. *Id*. at 12. Namely, that WIT knew or should have known about the increased risk of volcanic activity and had a duty to warn Plaintiffs. *Id*. Given that WIT purportedly had access to all the same information as RCCL, failed to warn Plaintiffs of the danger of eruption, and did not provide safety equipment or inform Plaintiffs of an evacuation plan in case of eruption, the Court finds that Plaintiffs have sufficiently established negligence on the part of WIT.

Defendant also argues that WIT is not RCCL's agent as a matter of law and thus RCCL cannot be held vicariously liable for WIT's actions. Mot. at 10. As in *Barham*, "Defendant argues that the Court should look to the explicit language on [RCCL's] website and the Plaintiffs' ticket contract because that language confirms that tour operators are independent contractors for whose conduct [RCCL] cannot be held responsible on a vicarious liability theory." 556 F. Supp. 3d at 1329. In general, when considering a motion to dismiss a plaintiff's complaint, "a court may not consider anything beyond the face of the complaint and any documents attached thereto." *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1397 (S.D. Fla. 2014) (citing *Financial Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007)). There is an exception to this rule, under which a document may be considered—provided plaintiff refers to the document in its complaint, the document is central to plaintiff's claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss. *Id*.

While the referenced document appears to meet certain criteria for consideration, courts in this district have found ticket contracts "not to be central to Plaintiffs' claims when the claims are

based in *tort* rather than *contract*." *Barham*, 556 F. Supp. 3d at 1330 (citing *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302 (S.D. Fla. 2019), *report and recommendation adopted*, No. 18-20829-CIV, 2019 WL 2254962 (S.D. Fla. Mar. 21, 2019); *Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256 (S.D. Fla. 2020) (holding website disclaimer that all shore excursions are operated by independent contractors is insufficient to dismiss an apparent agency claim as a matter of law); *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302 (S.D. Fla. 2011) (holding ticket contract was not central to plaintiff's agency claims)) (emphasis in original). Accordingly, the Court will look only to the facts in Plaintiffs' Complaint to determine if they have sufficiently pled their agency claims.

The Eleventh Circuit has "repeatedly observed that apparent agency liability requires finding three essential elements: first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014). Plaintiffs have set forth sufficient allegations to satisfy these elements. With respect to the shore excursion in question, RCCL handled all payment arrangements, promoted and branded the excursion on brochures and vouchers as an RCCL activity for the Ship's passengers, and organized transportation for the Ship's passengers to White Island. Compl. ¶ 20. Further, the voucher for the White Island shore excursion did not identify WIT as the tour operator but did prominently contain RCCL graphics and logos. *Id*. Finally, RCCL recommended that the Reeds not engage in excursions, tours, or activities other than those sold through RCCL, referring to them as "our excursions." *Id*. at ¶¶ 28, 31.

The appearance of agency is clearly present with respect to the shore excursion such that a reasonable person would believe that WIT was authorized to act for RCCL's benefit. Indeed, courts in this district have held as such under nearly identical circumstances. *See Doria v. Royal Caribbean Cruises, Ltd.*, 393 F. Supp. 3d 1141 (S.D. Fla. 2019) (citing examples of evidence of apparent agency including: "(1) Royal Caribbean making all 'arrangements for the subject excursion without effectively disclosing that the subject excursion was being run by another entity;' (2) marketing 'the subject excursion using its company logo;' (3) recommending that passengers 'not engage in excursions . . . not sold through' Royal Caribbean; (4) maintaining a 'shore excursion desk' where it sold and provided information for excursions; (5) collecting [plaintiff's] fee; and (6) issuing [plaintiff] a receipt for his fee."); *see also Adams*, 482 F. Supp. 3d at 1270 (holding cruise line referring to an excursion as "'our' excursion and recommending to [p]laintiff to not engage in excursions not sold through [the cruise line]" was sufficient to establish apparent agency). Accordingly, Plaintiffs' claim for negligence based on apparent agency does not warrant dismissal.

### III.  Negligent Misrepresentation (Count III)

With respect to Count III, Defendant claims that Plaintiffs' negligent misrepresentation claim must be dismissed as Plaintiffs' complaint "is devoid of facts supporting allegations that the representations RCCL made were in any way false." Mot. at 11. To prevail on a negligent misrepresentation claim, Plaintiffs must plausibly allege (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation. *Serra-Cruz v. Carnival Corp.*, 400 F.

Supp. 3d 1364 (S.D. Fla. 2019), *appeal dismissed,* No. 19-13725-DD, 2019 WL 7167484 (11th Cir. Nov. 25, 2019).

Here, Plaintiffs contend that RCCL "fail[ed] to disclose certain negative information including its serious and life-threatening potential risks and hazards" and "never qualified its representations by noting any risk of serious and disfiguring injuries from such an excursion." Compl. ¶¶ 103-107. As noted in *Barham*, it is well-established that general promises cannot be relied on as misrepresentations. 556 F. Supp. 3d at 1326 (explaining that "'[a] general promise that the trip will be 'safe and reliable' does not constitute a guarantee that no harm will befall plaintiff.'") (quoting *Isbell*, 462 F. Supp. 2d at 1237); *see also Sanlu v. Royal Caribbean Cruises, Ltd.*, No. 19-20773, 2019 WL 8895223, at *6 (S.D. Fla. Nov. 15, 2019) (collecting cases). But here, as in *Barham*, "there was a specific reason that Defendant shouldn't have made these promises. Namely, it was empirically demonstrable that a volcanic eruption was more likely than usual." *Id.* The Court agrees. Plaintiffs have properly alleged that the representations made by RCCL omit significant information regarding the risk of eruption such that they can be considered materially misleading. Further, in *Singh*, the Court explained that "[s]tating only that the activity level is 'strenuous' arguably suggests that passengers should consider only their physical fitness and medical history, rather than the risk that the volcano could erupt and cause injuries and even death." 2021 WL 6884873 at *17. Accordingly, because the Court must read the Complaint in the light most favorable to Plaintiffs at the motion to dismiss stage, Plaintiffs' negligent misrepresentation claim survives Defendant's Motion to Dismiss.

### IV. Negligent Selection of Tour Operator (Count IV)

In addition to general negligence, negligent misrepresentation, and negligence through agency, Plaintiffs allege that RCCL was negligent due to their selection of WIT as a tour operator.

Specifically, Plaintiffs aver that RCCL represented it "reviewed its tour operators, including each excursion's guide that provides proper equipment and ensures the safety of gear used on excursions." Compl. ¶ 116.  Defendant's Motion to Dismiss argues that (1) Plaintiffs' Complaint fails to allege sufficient facts regarding the inquiry RCCL made concerning WIT prior to contracting with ID Tours, who subcontracted the operation of the subject excursion to WIT; and (2) the Complaint lacks factual allegations indicating that WIT was unfit or incompetent.  Mot. at 12.  As explained below, the allegations in Plaintiffs' Complaint overcome these assertions.

To state a claim for negligent hiring or retention against a principal, a plaintiff must prove that (1) the agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury.  *Flaherty v. Royal Caribbean Cruises, Ltd.*, 172 F. Supp. 3d 1348, 1351 (S.D. Fla. 2016).  Plaintiffs allege that WIT's incompetence is evidenced by WIT's failure to determine or accurately communicate the risk of eruption, provide proper safety equipment, and provide first aid supplies or personnel trained in first aid which could have mitigated Plaintiffs' injuries.  Mot. at 19–20.  These allegations meet the pleading requirements regarding the first and third elements for negligent hiring or retention.

With respect to the second element, Defendant is correct that there is little in the Complaint regarding RCCL's specific inquiry into its tour operator.  However, Plaintiffs assert that RCCL represented it "thoroughly reviewed its tour operators[.]"  Compl. ¶ 34.  As a thorough evaluation of a volcano tour operator would necessarily include reviewing what safety measures they had in place in the event of volcanic eruption—and the Reeds highlight the lack of safety measures taken by WIT—the Court finds Plaintiffs' allegations sufficient.  *See Barham,* 556 F. Supp. 3d at 1327–28 (citing *Heyden v. Celebrity Cruises, Inc.*, No. 12-21923-CIV, 2013 WL 773477, at *4 (S.D.

Fla. Feb. 28, 2013) ("And while Heyden alleges no specific facts that would indicate Celebrity's failure to conduct an adequate pre-selection investigation into the tour operator's background and conduct, it is conceivable that the alleged pattern of misbehavior could have begun prior to Celebrity's selection of this particular contractor.")).  And while the court in *Singh* dismissed plaintiffs' negligent selection and retention claims without prejudice, this is because the court found the allegations were "wholly conclusory, resting on purely naked assertions devoid of further factual enhancement." 2021 WL 6884873, at *10.  As explained above, that is not the case here. Plaintiffs have sufficiently alleged that a thorough investigation by RCCL would have invariably revealed the unfitness and incompetence of WIT.  Accordingly, Count IV survives Defendant's Motion to Dismiss.

### V. Loss of Consortium (Counts V & VI)

Finally, Defendant alleges, and Plaintiffs concede, that claims for loss of consortium are not recognizable under maritime law.  *See, e.g.*, *Petersen v. NCL (Bah.) Ltd.*, 748 F. App'x 246, 251 (11th Cir. 2018).  Plaintiffs indicate that "they elect not to pursue a remedy for loss of consortium and will amend their Complaint at the appropriate time to remove Counts V and VI." Resp. at 22.  Given that Plaintiffs have not amended their Complaint as of the entry of this Order, Counts V and VI must be dismissed with prejudice.

### **CONCLUSION**

As explained herein, the allegations contained in Plaintiffs' Complaint are sufficient to plausibly support their claims under Counts I-IV.  However, Counts V and VI warrant dismissal as loss of consortium claims are not recognizable in maritime actions.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [ECF No. 50] is **GRANTED IN PART AND DENIED IN PART**. Counts V and VI are **DISMISSED** *with prejudice*.[1]

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 1st day of August, 2022.

_____
RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE

---

[1] As the parties concede that claims for loss of consortium are not recognizable under maritime law, no amendment will be able to remedy this deficiency in Plaintiffs' Complaint and dismissal with prejudice of Counts V and VI is warranted as a matter of law. *See Dragash v. Fed. Nat'l Mortg. Ass'n*, 700 F. App'x 939, 946 (11th Cir. 2017) ("While leave to amend ordinarily should be freely given, a district court need not grant . . . leave to amend where amendment would be futile.").